The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oye, oye, oye, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention to the court of counsel. God save the United States and its Honorable Court. Oye, oye, oye, all persons having any manner or form of business before the Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention to the court of counsel. Oye, oye, oye, all persons having any manner or form of business before the Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention to the court of counsel. Mr. Compton. May it please the Court. We're asking to vacate the conviction in this case because the district court advised Mr. Lockhart that he faced a 10-year statutory maximum when, in fact, he faced a 15-year statutory minimum. The government agrees that we've satisfied the first two prongs of the plain error test, so the question here is the third, whether this error impacted Mr. Lockhart's decision to plead guilty. We believe it did for one simple reason. If he had been properly advised, he had every incentive to roll the dice and go to trial. Well, how do we get around our Mossenberg case? Judge Floyd, there is one factor here that distinguishes this case from Mossenberg, and it's the dispositive one. And that is what I just pointed to. Here, Mr. Lockhart had no incentive to plead guilty because of the combination of the guidelines and the mitigating factors that are present in his case. Those two factors weren't present in Mossenberg. So if you look back at the briefing in that case, the defendant basically advanced a per se rule that this kind of error should always satisfy the third prong without any need to consider specific circumstances of the case. The defendant there didn't make the argument we make because he was in a very different situation under the guidelines. So in that case, but for the acceptance of responsibility reduction, the defendant in Mossenberg would have faced a guidelines range of 235 to 293 months. Because he pled guilty and got the three-level acceptance of responsibility reduction, his guidelines range fell to 188 to 235 months. So that's a five-year reduction on the front end and a seven-year reduction on the high end. That, of course, is very different from the situation that Mr. Lockhart is in where he had only an eight-month reduction on the low end. And the other difference here between Mossenberg is the existence of mitigating factors. In that case, there were no mitigating factors. In fact, the court sentenced Mr. Mossenberg at the high end of his guidelines range of 210 months. So if he had not pled guilty and had not gotten the reduction, he would have been looking at 293 months, a seven-year increase in his sentence. Here, we have three separate categories of mitigating factors that weren't present in Mossenberg and that would have given Mr. Lockhart every incentive to plead guilty. Those are, first, his youth at the time of the underlying offenses. He was 15 when they were committed and 16 when he was sentenced. And this court has recognized that youth at the time of an offense is a mitigating factor. The second mitigating factor that's present here that wasn't in Mossenberg is that all of his underlying predicates that triggered the career offender enhancement were committed in a one-week time span. That means he is very different from your typical career offender who's proven themselves to be incorrigible by committing an offense, serving time, not learning the lesson, committing a new offense, serving more time, getting out, and again, not learning the lesson. There were juvenile convictions, though, in Mossenberg, weren't there, Mr. Carpenter? At least one of them was a juvenile conviction. At least one may have been, but one of the distinctions of Mossenberg is he had racked up a very extensive criminal history above and beyond just the act of qualifying. Let me ask you about if we agree with you today, because certainly your client was misinformed at the time he entered his plea of guilty, are you representing to this court then that on remand that he would be going to trial? I think that it is very, very likely. Obviously, I can't 100% commit to that. He may change his mind. But when I spoke to him and asked him if he wanted to raise this issue, he very much affirmed that he did. So my full expectation is that he would go to trial. And I think this is a classic case that goes to trial in the federal defender system, where there is very little to gain by pleading guilty. You have no real effect on the guidelines. You have strong mitigating factors, and you have basically nothing to lose. And so I think he very likely would go to trial. And as we pointed out in the briefs, he may well receive an offer to a lesser offense if he proceeds toward trial. These kinds of cases with these kinds of mitigating factors do sometimes result in pleas to a 922J offense for possession of a stolen firearm. We've had two of those in our office that have pled that way in 2018 alone. So that's a pretty common outcome if you proceed toward trial, that the government may decide that a lesser offense is appropriate. And I do think there's a strong argument for that here, given the mitigating factors in this case. Well, as to your argument about North Carolina crime of robbery being a violent crime, I think that you're just putting that on the board for somebody else to review. Yes, Your Honor, I think that was something that would have to go in bank, based on the Burns-Johnson decision and, of course, the disagreement among the opinions in Middleton as well. We do think that under the reasoning that Judge Gregory set out in Middleton is strong, and that the relevant aspect of Torres Miguel is still good law that draws the distinction based on causation of injury versus the use of force, and that that would apply to this underlying offense. But I acknowledge that the case law is sufficiently muddy on that, that in-bank review would be the logical place to go with that. The other thing I wanted to touch on is the government relies in part in its brief on the attorney's statement at the very end of these proceedings as somehow curing, I suppose, the Rule 11 error. And so I wanted to address that. I think the Court should not rely on that for a couple of reasons. The Court never confirmed with the defendant that that, in fact, was his understanding that counsel had told him. That's exactly right. And so that's one point, that this report could have confirmed this, did not give Mr. Lockhart the opportunity to do that. And the second thing is that an attorney's statement, even if we assume this is true, an attorney's statement simply can't cure a Rule 11 error. The Rule 11 requires that the defendant be personally advised by the court of the applicable penalties, not by the attorney. And so that's what you see in this Court's decision in Goins. It says that a statement in the PSR as to the appropriate penalties cannot cure a Rule 11 error. The same is true here. A statement by the attorney cannot cure a Rule 11 error. And the reason for that, and the reason that makes a lot of sense, is that defendants put a lot more stock into what the court says than to what their attorneys say. So no matter how sophisticated or unsophisticated a defendant is, he or she will know that what their appointed counsel tells them, it may or it may not be right. But what the judge says from the bench, that's the law in the case that's going to control, and they better pay attention to that. And so here, and that's what the Supreme Court gets at this in the Rodriguez case, which talks about how a defendant in this situation is sorely misled about the consequences of a plea. And we think that's exactly what happened here. The other reason I would not rely on this attorney's statement is that it creates an incentive for defendants to interrupt proceedings. Rule number one advising a criminal defendant sitting in a district court is sit quietly, respectfully, and speak to the judge only when you're explicitly invited to do so. If you rely on this statement in the way the government does, it creates an incentive for every defendant to interrupt the proceedings  We don't think that's an incentive that this court wants to create. A couple other brief points I'll make about the reasonable probability standard that we're dealing with under the third prong. The first is the government relies on the strength of the evidence in this case, and that was something that was cited in Massenburg as well. But that cannot be a dispositive factor under the reasonable probability standard because of what the Supreme Court has told us in Dominguez-Benitez. There it says that if there's a reasonable probability that the defendant would go to trial, it does not matter that that choice would be foolish, quote foolish. So even if there is strong evidence, and even if there is a likelihood that he'd be convicted, that does not undermine the reasonable probability showing. And the reason is juries sometimes do crazy things, and so why not roll the dice and give it a try. The second thing I'll point to about the reasonable probability standard is that it is not a particularly onerous showing. I think sometimes when you hear the word probability, you start thinking likelihood, more likely than not. It's actually a lesser standard than that. If you look at the Supreme Court's decision, Smith v. Cain, which is at 565 U.S. 73, it's a 1995 decision. It's been cited repeatedly. What it says is that the reasonable probability does not mean that a defendant has to show that he more likely than not would have received a different verdict. Mr. Carpenter, in response to Judge Floyd's first question about Massenburg, you aptly described the factual differences, but do you think your standard review, plain error review, is going to be different in your case than it was in Massenburg? Is this a plain error review in terms of not objecting? Well, that was the case in Massenburg. That's what I'm saying. And so, I mean, we've conceded from the beginning that this is under plain error review. And perhaps we could have or should have made an argument that it's not, because if you look at Rule 52, the error was brought to the court's attention here, both through the PSR and through this attorney's statement. So there is a plausible argument that we really shouldn't even be under plain error review. You know, we didn't make that argument because we do think the case law suggests that you have to move to withdrawal to fully preserve the issue. And so perhaps in retrospect we should have made that argument, but I do think we satisfy the plain error standard, even under Massenburg. You know, I was looking back, Mr. Carpenter, in terms of the factual recitation of the court in the Massenburg case, and the predicates for his enhancement occurred when he was 14 and 15 years old. So he was actually younger than your client, and these were held against him. So how do we – the age apparently is not a valid reason for us to rely on in terms of your position. So what is your next strongest argument that you would advance to us for the distinctions between that case and the one we have here? Sure. So I wouldn't say – I think it is the combination of age being 0.1, the fact that his offenses were all committed in a one-week time span, 0.2, and the fact that he had done well after his first conviction is 0.3. It had been almost – I think it had been 9 to 10 years since his offenses. He had been released from state custody and had been out for three years with no incident, completing successfully any state probation or supervision. Right, but those don't go to whether it affected his substantial right. Isn't that what we have to find under plain error analysis, that his substantial rights were affected, not that he may be a better person than Mr. Massenburg was when he stood in front of the court, but that his rights were affected? And don't we have to go back to the concept of whether he would have gone to trial if he hadn't pled guilty? Yes, and let me back up to start from the beginning. We think the difference with Massenburg is that in this case, because of all of its facts together, the guidelines and the mitigating arguments, Mr. Lockhart had every incentive to go to trial and not to plead guilty. Mr. Massenburg, on the other hand, because of the particular facts and circumstances, the guidelines and the mitigating and aggravating factors in his case, did not have that same incentive structure. He had a very strong incentive to plead guilty, even knowing that he faced an armed career criminal enhancement because it saved him 5 to 7 years under the guidelines and because he did have more aggravators in his case than Mr. Lockhart does. And I acknowledge that Mr. Massenburg was young at the time of the act of triggering offenses, but his overall criminal history was significantly higher. And we know that because the reason he was facing the 235 to 293 month guidelines range, and some of this isn't apparent in the opinion, but it's in the briefs in the Massenburg case, is that his underlying guidelines range would have been offense level 33 and criminal history category 6, which put him at 235 to 93. By contrast, Mr. Lockhart was in criminal history category 3, but for the armed career enhancement, which bumped him up to level 4. So Mr. Massenburg compiled a substantially more serious criminal history. And so that is, in addition to the youth at the time of the act of triggering offenses, the overall extent of the criminal history is another difference that put Mr. Massenburg in a different situation. So whereas he had to rely on appeal and a per se rule, and you see in the court's opinion sort of towards the end, it says, if we agreed with Mr. Massenburg in this case, we'd be creating a presumption that in every case the third prong is satisfied and we're not willing to do that. And the reason they had to deal with whether there's a presumption is that Mr. Massenburg had not been able to point to specific factors in the record in his case. And we have pointed to those in this case. Again, the combination of the guidelines and the mitigating factors that are present.  Thank you. Thank you, Mr. Coburn. Ms. Ray. May it please the Court, Amy Ray for the United States. Your Honors, the District Court unquestionably committed plain error in this case. But as the Supreme Court noted in Jones, and this Court has also held, where an error, where the effect of an error is uncertain, the defendant cannot satisfy his burden to establish that the error affected his substantial rights. So in this case, we have the only evidence in the record suggests that the error did not affect his substantial rights, and our case is stronger than the case in Massenburg for that reason. In Massenburg, there was no evidence either way. In fact, it was suggested that the parties had no idea that the Armed Career Criminal Act might apply until the pre-sentence report was issued. Here, we have evidence not only that they knew by the time the pre-sentence report was issued, but Mr. Lockhart's own counsel stated that he had been fully aware at the time that he pleaded guilty that the Armed Career Criminal Act might apply. But we don't know that the defendant knew, understood that. Isn't that the whole point, though, Ms. Ray, of having the judge be the one, as Mr. Carpenter says, who's telling the defendant that in order to ascertain whether it's a knowing plea, plea has to be knowing or it's not valid. Absolutely, Your Honor. So how can we – it looked to me like the lawyer was trying to cover his bases at the end. You know, hey, Judge, there might have been a mess – pardon me – a mess up here. And because – you know, I did tell my client more than you may think I told him, and it looked like the lawyer was maybe, you know, trying to reassure the court, but the court never really took the time to make sure the client understood. Well, Your Honor, the attorney speaks for the client. If the attorney was not – was misrepresenting something here, the client has to – Oh, I'm not saying misrepresenting, but the lawyer was saying I told him, but I told him doesn't mean I told him and he understood. Those are different concepts, aren't they? Absolutely, but I would say this. The defendant affirmed at the beginning of the sentencing hearing that he had read the pre-sentence report and understood its contents. In other words, he understood that the district court had made a mistake because that was reflected in the pre-sentence report, and he understood the consequences. He understood that he faced a mandatory minimum of 15 years and maximum of life. If this case were on harmless error review as it was in Goins and in Hairston, we might be in a different posture, but it's not. It's plain error standard of review. The defendant has the burden to show, and in Massenburg, we did not have this evidence that the attorney offered, which was that the defendant actually knew. This defendant has an avenue for relief if his counsel somehow was incorrect. He can file a 2255 motion. The district court can hold an evidentiary hearing and determine if that's not true. But the facts of this case are stronger than they were in Massenburg. Well, how big a deal is the failure to move to withdraw the plea in this case? It's significant, Judge Floyd. And, in fact, that was one of the significant factors this court held in Massenburg, again, under a plain error standard of review, demonstrated that the defendant could not actually show that the error affected his substantial rights. Here, had the defendant thought that it affected his substantial rights, he could have moved to withdraw the plea. And Mr. Carpenter cites Rodriguez for the proposition that he would have been able to show that he had a fair and just reason for withdrawing the plea, had he chosen to do that. So, again, where the slate is clean, where we don't have any evidence either way, the tie goes to affirming the district court's judgment. Short of withdrawing a guilty plea, what would be the evidence that you could have under the Massenburg rule? What evidence would you look to as to the district court proceedings, other than moving to withdraw the plea? For example, in Hairston, the defendant stood up and said, if I had known this were true, if I had known I faced this mandatory minimum, I would not have pleaded guilty. But isn't that the problem of misinformation? When somebody's not telling somebody, when the court isn't telling somebody something accurately, then how is the defendant then supposed to stand up and say, well, if you had told me accurately, I would have reversed course and done something different. That presupposes that he knew that he was misinformed, and he never heard that from the court, from the bench. He did. He did. He did not. He was never asked specifically by the district court, but he had the pre-sentence report, which showed that he was misinformed. How many pages was that report? It's not that lengthy. I don't know, Your Honor. I mean, I could look, if Your Honor is happy to look. Yeah, I just feel a little uncomfortable with the concept that somebody says I've read the report and that they really understand everything that's going on in the report. Right. Well, I understand that. But when you take the fact that he told the district court he had read it and understood it, the fact that the attorney then stands up and says he was aware of it, fully aware, then at that point we have evidence in the record that he knew before the end of those proceedings that he had been misinformed. But even without that evidence, this court didn't have that evidence in Massenburg. Well, it had evidence that he knew by the time of the pre-sentence report, the attorneys knew. But there was no evidence in Massenburg that the attorney had actually informed the client at the time of the guilty plea. Ms. Ray, we talk about substantial rights, Sixth Amendment. I mean, what is the right that he's giving up? A whole lot of rights involved, right? Jury trial and call witnesses and all those things because the court represents this is the penalty you will get. Those are a whole lot of rights you give up. Absolutely, and he affirmed in the Rule 11 proceeding he was asked about every one of those rights, and he affirmed that he gave it up. This is not a constitution. But the court never was in error, as you admit, plain error. The court was in error only on one aspect, Your Honor. A big aspect, how much time I'm going to do in jail. That's the biggest one there is when you go to sentencing. I don't disagree with that, Your Honor. Is there one more important than that one? Think about it. When you go for sentencing, what's more important than how much time you're going to be locked up? I don't think there's anything that I can think of. That's substantial. Sure. And if that's the error, the plain error, that's important. For example, you talk about pleading guilty. You don't have a right to plead guilty. Do you? You can enter. No, I guess the court could decline to accept the guilty plea. Exactly. That's how important what the court says. You don't have a right. You have a right not to plead not guilty, but there's no constitutional right to plead guilty because the court said I'm not accepting your guilty plea. That's how important that is what the court says. I agree, and, Your Honor, in Massenburg, this court said that the error strikes at the very core of the Rule 11 proceedings and what it is designed to protect. In Massenburg, this court was looking at the very same error with the very same gravity, and this court did not have the kind of evidence that is in this record that the defendant actually knew at the time that he pleaded guilty that he faced a potential life sentence. And yet, in Massenburg, the court held that the defendant could not satisfy the plain error standard of review to show that that error affected his substantial rights. If all things were equal, Mr. Carpenter talked about how we can't... He cited Goins and said you can't correct a Rule 11 error. We don't dispute that. If this were under harmless error standard of review, this would be a different case, potentially. It's not. It's under plain error standard of review. He has the burden to prove that this error affected his substantial rights, and he simply has no evidence to rely on to show that it did. And I do want to respond to Mr. Carpenter's suggestion that this gentleman had nothing to gain by pleading guilty. There was an eight-month difference. There may have been some factors that the court could have... could have relied upon to impose a downward variant sentence, but there is no evidence in this record that Judge Conrad was intended to do that. And there is also no evidence that the United States was prepared to offer this gentleman a plea to a lower offense. We had the evidence as in Massenburg, and Massenburg noted that and relied upon the fact that the evidence was strong. Here we have a defendant who was reaching for a loaded gun, a .35-1 rounds in the pistol, and another 10-round magazine there. He was reaching for it. We had very strong evidence of this gentleman's guilt. And so when you combine that, it is an objective standard. Is it rational? And this court in Fuget said that the defendant would have to show that it would be rational for him to roll the dice and go to trial. And here we don't have that proof. We don't have any evidence. Just because he had an eight-month difference by pleading guilty, the evidence was strong, and there's certainly nothing in the record that suggests we would have offered him a plea to a lower offense. Don't we really need a bright-line rule? When you make an error like this, it just goes back. Because we can't try your case. You may be right that the government had a powerful case, but the appellate court, we can't weigh that. I'm not suggesting you may have one, but we can't do that. But we can see plain error that impacts how much time a person will serve. And on that basis, on the record, he was misinformed by error of the court, but still misinformed. So perhaps maybe we should go back and I guess try to convince our colleagues to review this. Your Honor, that's what it would require. It would require an en banc review of Massenburg. Because in Massenburg, this court explicitly rejected that very suggestion and that very argument that there should be a bright-line rule and it is under the plain error standard of review. That decision is fully consistent with Jones' Supreme Court's decision that says, if we don't know how it impacted the case, then the judgment stands. It's a plain error standard of review. So the bright-line rule does not apply. This court held as much in Massenburg. If this court were to overrule that en banc, then so be it. But this panel, of course... And I don't think, by the way, that that is consistent with the Supreme Court's articulation of the standard of review. How much do you rely on the representation by counsel at the end, which I found to be very interesting, that without that, you would still say Massenburg has to be followed? In other words, there's no evidence that at all anybody told him otherwise. Yeah, absolutely. That is Massenburg. Right, exactly. So you just think it's just ironclad net regard. I'm afraid so, Your Honor. One more question for me, anyway. How far do we go at Massenburg? Let's suppose the court says, I'm not going to give any of the Rule 11 those questions at all. I'll accept your guilty plea and just give you the wrong... whatever. And then, there's no evidence in plain air that he would have done differently. I think Massenburg would still say it's fine. You could give none of those. None of those things. The jury trial, all those things, where you don't say anything. Just sentence the person. Would that be fine under Massenburg? You think it goes that far, ironclad? Your Honor, I don't know. It's hard for me to imagine that a defendant would not actually object to that. We put a lot of burden on... I thought that's what lawyers were for and for courts. Even there, you say she or he would have to stand up and say, something is wrong here. I saw on television they do a little bit more than that. No, I'm sorry, Your Honor. I mean that the lawyer wouldn't have objected. I'm not sure, though. I've never seen a lawyer at the end say, oh, by the way, I told him he knew everything about it. Well, for one thing, the United States would object if the Rule 11 proceedings weren't conducted. I'll give you that in several cases the rule is lawyers can bind their clients. But in criminal cases, how far do we go with that? The law of agency still applies. The lawyer speaks for the client. Again, though, Judge Floyd, there's a backstop here, which is a 2255 proceeding. If the defendant feels like he wasn't... that Mr. Forrester was not accurately representing the fact, which was that he did know at the time he pleaded guilty. But this is only one piece of evidence. Judge Gregory, you asked me, how far are we relying on it? It's simply evidence that it didn't affect his substantial rights. Massenburg says if we don't have it, we still win, but it is evidence. And just as his decision not to withdraw the plea is evidence that he knew. And I don't think that this Court would impute to Mr. Forrester an intent to purposely misstate something, and I don't think that that's what would have happened. In other words, so we do assume that lawyers are, as officers of the Court, are telling the truth. And if he was telling the truth, then this defendant knew at the time he pleaded guilty that he faced the possibility of a mandatory minimum sentence of 15 years and a maximum of life. And even if we didn't  have that. The defendant didn't move to withdraw his plea. The defendant did not suggest that his lawyer had just said something that was not true. And for that reason, the District Court's judgment should be affirmed. If this Court has no further questions, I appreciate your time. Thank you, Ms. Wright. Mr. Covenant, you have some time reserved. Judge Floyd, I want to start with your question about the agency rule as it applies in criminal cases. And I don't dispute the general proposition that in many cases the defendant is the agent of the client, but Rule 11 is a very specific exception to that rule. So if you look at the text of Rule 11, what it says is the Court must personally advise the defendant about the applicable penalties, not advise his lawyer. And it also says that the Court must ensure that the defendant understands these penalties, not that his lawyer understands these penalties. Now, Mr. Carpenter, how do you, and if you could answer this as part of your response, how do you place in the mix the fact, as Ms. Ray pointed out, that your client said that he had read the probation report and understood it, and that that report did refer to the error? So if your client had read it and understood it, then he would, according to Ms. Ray, would have known of the error. So that exact factor is going to be present in Goins, in Harrison, in Massenburg, because the colloquy at the beginning of the sentencing is repeated in pretty much every sentencing where the judge says, here's the PSR, did you receive this, did you read it? It's a very standard procedure before any sentencing. Right, but that doesn't answer the question, though. The question is, why isn't that evidence that he, in fact, knew? So, first of all, it was evidence in Goins. Goins rejected this idea that reciting it in Rule 11 could cure the error. So that's, I think, the point I was intending to make. The other point is that Rule 11 is specific as to the defendant must be advised of the particular penalties. Here, there is, I didn't look at the exact page count, PSR is 30, 40, 50 pages. There is a lot of other information in there as well. And so, without having the judge specifically discuss the penalties, we can't be confident that the client really understood them. And I think that takes us to a point that's important here, and a couple of the questions have touched on that. The district court could have very easily fixed this issue. The court had notice from the PSR and then, again, at the end of sentencing by the kind of strange attorney statement, that there's an issue here. The court could have paused the proceedings, placed Mr. Lockhart back under oath, examined him to confirm that he did, in fact, understand these penalties, and that knowing the penalties, he did indeed wish to plead guilty. That's all we're asking for here. It's a very limited remedy. This is no get-out-of-jail-free card. It's a send-it-back-to-the-district court, make sure he's advised, and make sure that he is proceeding either pleading guilty or to trial based on a full understanding of the penalties without this judicial error tainting his decision-making process. And I want to respond to Ms. Ray's point about the presumption and the lack of record evidence. The government, it's kind of subtle, but what the government's asking for here is actually the opposite presumption, that you can never get relief here in a plain error context. Because what they're saying is, well, you have to have a statement on the record by the defendant himself interrupting the proceedings and expressing dismay or something about penalties. If you do that, though, you're in de novo review because you've highlighted the issue and you've raised it. So what the government's really saying is that if you're on plain error and your lawyer doesn't miss this at the Rule 11 and then doesn't advise you about the possibility of withdrawing the plea, and then you don't take it to proceedings, then you can never get relief from this kind of error. So the effect of the government's rule here requiring an on-the-record statement is the opposite presumption of the one that Judge Gregory has suggested would make the most sense. And so we ask the Court to be very clear not to create that kind of irrebuttable presumption that you cannot get review on plain error. We think we've satisfied the plain error standard by pointing to particular record evidence here. The guidelines range, the mitigating factors that are present here that weren't present in Massenburg, and to create for Mr. Lockhart an incentive structure that gives him every reason to take a chance at trial rather than pleading guilty. I want to highlight one more thing about the importance of this designation. We talked a bit about the fact that it raises the maximum of 10 to a minimum of 15, but it also has a tremendous impact on the guidelines range. Without the armed career designation, he's looking at a guidelines range of 46 to 57 months. So we're talking four years as opposed to 15. It's just a tremendous impact on his liberty, and we think he ought to be able to proceed with full knowledge of that in making his decision whether to plead guilty or whether to go to trial. If there are no further questions, we ask the Court to be clear. I wanted to say that Massenburg is different in the sense that here, when his lawyer interrupted and said that he was letting the Court know that the Court had not properly advised him, wasn't he? It did, and that's why, like I said, there is an argument that this really shouldn't be. That's why I asked you, is this really plain error review? Because it's different, because what he said was, it did two things. You haven't done it, but let me try to cure it and tell you that I told him. But then since that's not plain error review because it was brought before, because the Court said, oh, I did, wait a minute, forget about you telling him, I'm going to tell him right now. That was an error, and that, right, exactly, so that's why I asked you the question, is it really plain view? Yeah, I agree. The Court was on notice twice and really could have easily remedied this problem, and so I think that does weigh in to the fact that plain error relief makes, relief in general, regardless of which standard it's under, makes a lot of sense here. Just one final point, since you raised that, Judge Riggers, I think it should, this Court should be very hesitant to place too much weight on this Attorney's statement, because it's such an unusual scenario where the proceedings have essentially ended, and it seems almost as if the Attorney steps out of his representational, zealous advocate role to, as Judge Keenan said, kind of cover up a mistake that was made. I think that's, I don't think the Court needs to really deal very much with that. Yeah, I didn't mean cover up. What I meant was he was just trying to tell the Court, look, I didn't drop the ball here. Right, well, exactly. I will say when I shared this with some colleagues, the immediate reaction is that it was an example of CYA, and every attorney does it sometimes, and it's, I just don't think the Court should rely on that to strip Mr. Lockhart of his rights. So we'd ask the Court to vacate the conviction. Thank you, Mr. Coffin and Mr. Reddy. We'll come down, and we're not going to come down, we're going to reach down, we're going to vary our policy, our wonderful practice and Greek Council. Would you come forward and pose to the bench?
judges: Roger L. Gregory, Barbara Milano Keenan, Henry F. Floyd